IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GARY ALLENBRAND, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 05-2511-KHV |
| | ) | |
| LOUISVILLE LADDER GROUP, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On May 30, 2002, Gary Allenbrand sustained injuries while he was climbing down an eight-foot ladder manufactured by Louisville Ladder Group, L.L.C. ("LLG"). Allenbrand filed suit against LLG, alleging strict liability, negligence and breach of express and implied warranties. On behalf of his wife, Allenbrand also asserts a claim for loss of services. This matter is before the Court on Defendant Louisville Ladder Group, LLC's Motion For Summary Judgment (Doc. #47) filed October 13, 2006. For reasons stated below, the Court sustains defendant's motion.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id.

at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## **Factual Background**

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the

2

light most favorable to plaintiff, the non-movant.[1]

This case arises from a ladder accident that occurred on May 30, 2002. Plaintiff claims that he sustained injuries when a Davidson 428-08, Commercial Duty ladder collapsed, causing him to fall to the concrete floor of his garage.[2] Plaintiff claims that the ladder was defective in design, manufacture and warnings. He claims that LLG is liable under theories of strict liability, negligence, breach of express and implied warranties.

American National Standards Institute ("ANSI") is a non-profit organization which promulgates safety standards for thousands of products, including ladders. The Occupational Health and Safety Administration views ANSI Section A14 as the "national consensus standard" pertaining to ladders. The design of the ladder in this case complies with ANSI A14.2-1990, which is entitled "American National Standard for Ladders - Portable Metal - Safety Requirement."

ANSI requires that a ladder be tested when the design is first established. LLG has exceeded ANSI requirements as to the ladder in this case. Since the ladder was designed in 1988, it has been tested and re-tested multiple times for continued compliance with ANSI standards and adherence to the established design, and it has passed these tests.[3] LLG's engineering consultant, Michael Van Bree, also conducted the ANSI

---

[1] The Court does not consider facts which the record does not support.

[2] Around 2000, plaintiff's daughter gave plaintiff the ladder. Before then, she and her husband used the ladder to paint. Plaintiff is not aware of any problems with the ladder before his accident.

[3] Plaintiff argues that the Court should exclude this fact because he has not had the opportunity to depose defendant's expert. If plaintiff thought further depositions were necessary, however, he should have sought a continuance under Rule 56(f), Fed. R. Civ. P. That rule allows a party to submit an affidavit "that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition" and permits the Court to order a continuance to permit further discovery. Id. The Court has discretion whether to grant

(continued...)

stability tests and additional strength tests on an exemplar Davidson 428-08 Commercial Duty rated ladder. The exemplar ladder passed all ANSI tests. Indeed, further testing established that the design of the ladder actually has over-capacity with regard to the step-to-rail rivet connection.

The ladder is safe in its design, manufacture and warnings, and it is not defective.[4] It has no material deviations from the manufacturer's specifications.

At the time of his accident, plaintiff had successfully climbed up and down the ladder twice without incident. At the time of plaintiff's accident, the ladder had a label, which read "CAUTION" and provided warnings such as: "Keep body centered between side rails. Do not overreach;" "Do not stand above this step;" "Lock spreaders;" "Set all four feet on firm level surface;" and "Read additional instructions on the ladder." Plaintiff saw the "CAUTION" label. The "CAUTION" label did not include any information that plaintiff did

---

[3](...continued)
a motion under Rule 56(f). See Jensen v. Redevelopment Agency, 998 F.2d 1550, 1553-54 (10th Cir. 1993). The rule is not "invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." Pasternak v. Lear Petro. Explor., Inc., 790 F.2d 828, 833 (10th Cir. 1986). Here, plaintiff has not presented an affidavit which states with specificity how additional time would enable him to obtain evidence to oppose the motion for summary judgment. Furthermore, plaintiff has not explained his failure to previously take such discovery. Accordingly, plaintiff has not shown that a continuance is appropriate under Rule 56(f). See Jensen, 998 F.2d at 1554. The Court therefore overrules plaintiff's objection.

[4] Plaintiff objects to this fact because he has not had the opportunity to depose defendant's expert. As explained above, because plaintiff did not seek a continuance under Rule 56(f), the Court overrules plaintiff's objection.

Plaintiff also argues that this fact and others are controverted by the expert report of Dr. Virgil Flanigan who opines that plaintiff's ladder failed because of the load which plaintiff applied to the ladder structure; that the ladder could not carry plaintiff's load because of rivet spacing and a crack at the rivet hole in the rail; and that the failure was a result of the manufacturing process. Because the Court has held that expert testimony of Dr. Flanigan is inadmissible under Rule 702, Fed. R. Evid., and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), see Memorandum And Order (Doc. #67) filed January 11, 2007, the Court does not consider Dr. Flanigan's report for purposes of defendant's motion for summary judgment.

not already know. Plaintiff also saw the "SAFETY FIRST" label (with additional instructions) on the ladder before the accident, but he probably did not read every detail on it.

At the time of his accident, plaintiff was using the ladder to install a ceiling fan in a bedroom adjacent to the garage. Plaintiff stood on the second highest step from the top of the ladder and worked in the attic above the garage to drill a hole through a two-by-four plate which separated the garage and bedroom. After he finished drilling the hole and pushing wire down the hole, plaintiff laid the drill down in the attic, stepped down with both feet to the third highest step on the ladder, and reached up and grabbed his drill. At the time plaintiff was standing on the third highest step with the drill in his hand, the ladder seemed stable and it was not wobbling. With the drill in his left hand, plaintiff stepped down from the third highest step of the ladder with his left foot, which put all of the pressure on his right foot. Plaintiff claims that the ladder "collapsed" before he was able to put his left foot down. No one witnessed plaintiff's fall. Plaintiff does not know when the ladder changed shape or how it changed shape.[5]

The accident happened in a split second and plaintiff does not recall if he made contact with the ladder as he fell. The damage to the ladder is consistent with a tip over accident where the user impacts the ladder. The damage to the ladder is inconsistent with plaintiff's theory that the ladder failure resulted from a riveting deficiency which caused the right rail to fail at the second step.

### Analysis

LLG seeks summary judgment on all of plaintiff's claims. As to plaintiff's claims of strict liability,

---

[5] At some point during the accident, the right and left front rails of the ladder and the rear assembly (including the spreader braces) changed shape. See Expert Report of Dr. Van Bree at 4, attached as Exhibit 1 to Defendant Louisville Ladder Group, LLC's Brief In Support Of Its Motion For Summary Judgment (Doc. #48) filed October 13, 2006.

negligence and breach of implied warranty, LLG argues that it is entitled to summary judgment because the ladder did not have a manufacturing, design or warning defect. As to plaintiff's claim for breach of express warranty, LLG argues that it is entitled to summary judgment because (1) plaintiff cannot show that any breach of the express warranty caused plaintiff's injuries and (2) plaintiff is not a "buyer" of the ladder under Kansas law.

### I.    Strict Liability, Negligence And Breach Of Implied Warranty Claims

Plaintiff's strict liability, negligence and implied warranty claims are governed by the Kansas Product Liability Act ("KPLA"), K.S.A. §§ 60-3301 to 60-3307, which applies to all product liability claims regardless of the substantive theory of recovery. See Savina v. Sterling Drug, Inc., 247 Kan. 105, 126, 795 P.2d 915, 931 (1990). Kansas law recognizes three ways in which a product may be defective: (1) a manufacturing defect, (2) a warning defect or (3) a design defect. See Delaney v. Deere & Co., 268 Kan. 769, 774, 999 P.2d 930, 936 (2000). Plaintiff asserts that LLG is liable under all three theories. LLG argues that it is entitled to summary judgment because the ladder did not have a manufacturing, warning or design defect. Plaintiff has not presented admissible evidence of a defect.[6] See Jenkins v. Amchem Prods., Inc., 256 Kan. 602, 635, 886 P.2d 869, 889 (1994) (specific defect must be established to prove strict liability), cert. denied, 516 U.S. 820 (1995). Absent such evidence, the Court sustains LLG's motion for summary judgment on plaintiff's claims of strict liability, negligence and breach of implied warranty.

### II.   Breach Of Express Warranty Claim

Plaintiff alleges that LLG breached an express warranty that the ladder was fit for its intended purpose.

---

[6]     As explained above, the Court excluded the testimony of plaintiff's expert, Dr. Flanigan. See supra note 4.

See Pretrial Order (Doc. #53) at 7-8. LLG argues that it is entitled to summary judgment on this claim because (1) plaintiff cannot show that any breach of the express warranty caused plaintiff's injuries and (2) plaintiff is not a "buyer" of the ladder under Kansas law.

Kansas law on express warranty claims does not demand proof of a specific defect, but plaintiff must nevertheless show that the product failed to perform as expressly warranted and that this breach of warranty caused his injury. See Voelkel v. Gen. Motors Corp., 846 F. Supp. 1468, 1477-78 (D. Kan. 1994) (citing Cantrell v. Amarillo Hardware Co., 226 Kan. 681, 685, 602 P.2d 1326, 1330-31 (1979)). On the issue of causation, plaintiff relies solely on the expert opinion of Dr. Flanigan that LLG would have discovered the failure in the ladder by using an ANSI load test. Because the Court has excluded Dr. Flanigan's testimony, plaintiff has no admissible evidence on the issue of causation. In any event, as explained in the Court's order on defendant's motion to exclude Dr. Flanigan's testimony, all of the tests under ANSI 14.2 which apply to the ladder in this case are "design verification tests," not tests for manufacturing defects. ANSI 14.2-1990 § 7.1.5, 7.5.1-13, attached as Exhibit 3 to Defendant Louisville Ladder Group. LLC's Response To Plaintiff's Motion To Exclude The Expert Testimony Of Lori Bremick And Strike Ms. Bremick's Report (Doc. #56) filed October 27, 2006. Ladders subject to the design verification tests of ANSI 14.2 are "not intended for subsequent use." ANSI 14.2-1990 § 7.1.5. In addition, Dr. Flanigan ignores the fact that defendant tested the ladder design under ANSI 14.2 some 20 times since 1988 and the ladder passed all of the different strength and stability tests under ANSI 14.2. See Bremick Report at 2-3, attached as Exhibit A to Defendant Louisville Ladder Group. LLC's Reply To Plaintiff's Response To Defendant's Motion To Exclude The Expert Testimony Of Dr. Virgil Flanigan And Strike Dr. Flanigan's Report (Doc. #59) filed November 10, 2006. Because plaintiff has not presented admissible evidence that LLG's breach of an express warranty caused

7

plaintiff's injuries, the Court sustains LLG's motion for summary judgment on plaintiff's express warranty claim.[7]

**IT IS THEREFORE ORDERED** that <u>Defendant Louisville Ladder Group, LLC's Motion For Summary Judgment</u> (Doc. #47) filed October 13, 2006 be and hereby is **SUSTAINED**.

Dated this 11th day of January, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>KATHRYN H. VRATIL<br>United States District Judge

---

[7] Because the Court sustains defendant's motion on the express warranty claim on causation grounds, it need not reach the issue of whether plaintiff qualified as a "buyer" under Kansas law.